An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-1123

Filed 17 September 2025

Cumberland County, No. 24JB000038-250

IN THE MATTER OF L.K.

Appeal by juvenile from judgment entered 10 July 2024 by Judge Cheri Siler-Mack in District Court, Cumberland County. Heard in the Court of Appeals 14 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Elizabeth S. Young, for the State.*

> *Thomas, Ferguson & Beskind, LLP, by Kellie Mannette, for appellant.*

ARROWOOD, Judge.

Juvenile-appellant L.K. ("Leo"),[1] appeals from judgment adjudicating him delinquent for indecent liberties between minors and imposing a Level 1 disposition upon him. For the following reasons, we vacate the order of the trial court.

I.    Factual Background

On 11 January 2024, a juvenile petition was taken out against Leo, alleging he

---

[1] Pseudonyms are used to protect the identities of the juveniles.

had taken indecent liberties with his half-sister ("Lisa"), a minor at least three years younger than Leo, in May 2023. The case came before the trial court for adjudication on 22 April 2024. The testimony at trial tended to show the following.

In May 2023, Lisa was living at home with her mother, sister, and Leo. Lisa testified that Leo came into her room to show her a smoke trick with a vape pen that he had seen on a TikTok video. He then touched her on the butt and offered her $50.00 to let him touch her. Lisa told him to stop, but he stayed in her room and touched her again, a total of three or four times. She did not report the incident to either her mother or sister, but eventually told her school counselor Jada Henderson ("Ms. Henderson"), on 2 November 2023. Ms. Henderson filed a report with the school resource officer, which eventually led to a DSS referral to the Fayetteville Police Department on 15 December 2023. Detective Timothy Huggins ("Detective Huggins") interviewed Lisa at school on 18 December, and the next day filed a petition for indecent liberties. Based on the respective birth dates gathered during his investigation, Detective Huggins decided to charge indecent liberties, but he was unable to recall the birthdates during his testimony at trial. The State called Miguel Villalon ("Mr. Villalon"), the court counselor for Leo, who testified that Leo's mother told him during intake that Leo's birthdate was 13 March 2008.

Following the conclusion of the State's evidence, Leo declined to make a motion to dismiss. Leo's counsel gave a brief closing argument, and after the State's closing, the trial court found juvenile to be delinquent on the charge of indecent liberties;

during the disposition hearing, the court ordered Leo be placed on electronic monitoring. Leo gave notice of appeal 22 July 2024.

## II. Discussion

Leo raises three issues on appeal. First, he contends there was insufficient evidence of the act being "for the purpose of arousing or gratifying sexual desire" and requests invocation of Rule 2 to consider the issue because no motion to dismiss on those grounds was made at the close of evidence. Second, Leo argues the admission of testimony from the court counselor, Miguel Villalon, as to Leo's date of birth was improper due to the requirement for him to keep this information confidential. Finally, Leo contends the trial court committed reversible error by allowing testimony that violated Leo's right to confront and cross-examine witnesses. Based on the trial court's failure to state a standard of proof, we remand this case to the trial court for clarification.

## A. Jurisdiction

It is a general rule of appellate procedure that an appellate court is limited in review to the clearly defined issues raised by the parties. *First Charter Bank v. Amer. Children's Home*, 203 N.C. App. 574, 580 (2010). Leo's brief and arguments do not specifically identify the standard of proof as an issue. However, Leo argues that the lack of evidence of intent was "so severe" that the trial court orally concluded that the State had not shown "what his intent was[,]" yet "[i]nexplicably" found Leo delinquent, which raises a question of whether the trial court employed the correct

standard of proof.

"The trial court's standard of proof in a juvenile delinquency proceeding must be reflected in the record, either orally or in writing." *In re B.E.*, 186 N.C. App. 656, 661 (2007) (citing *In re Rikard,* 161 N.C. App. 150, 154 (2003)).  An adjudication of delinquency based on the incorrect standard, where there would have otherwise been no such adjudication, would be "manifest injustice," especially considering the basic Constitutional right here implicated.  Although we decline his request to invoke Rule 2, we proceed to address the issue of whether the trial court failed to incorporate the correct standard of proof.

### B.      Standard of Review

> It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.  While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable de novo.

*Lee v. Lee*, 167 N.C. App. 250, 253 (2004) (cleaned up).

### C.      Standard of Proof

A trial court must be convinced beyond a reasonable doubt in order to adjudicate a juvenile as delinquent.  *In re B.E,* 186 N.C. App. at 659; N.C.G.S. § 7B-2409 (2025).  The court "shall" state that the allegations have been proved according to § 7B-2409, or, in the event they have not, dismiss the petition with prejudice.  *Id.*,

§ 7B-2411. The use of the word "shall" creates a statutory mandate concerning the standard of proof. *In re Rikard*, 161 N.C. App. 150, 154 (2003). To satisfy this mandate, we have held that a trial court must "unequivocally state the standard of proof in its order," although this may be done either orally or in writing. *In re B.E.*, 186 N.C. App. at 661. Failure to properly incorporate the standard of proof is reversible error which, at the very least, requires a remand for clarification. *Id.* at 661–62.

In the case *sub judice*, our review of the transcripts and record reveal that at no point did the trial court announce the standard of proof by which it had adjudicated Leo delinquent. At the beginning of its ruling, the trial court merely stated that "the juvenile is delinquent of the charge of indecent liberties," and concluded, "The Court will find that this was for the purpose of sexual desire and the Court will find the juvenile delinquent of the charge of taking indecent liberties with a child which is a Class 1 misdemeanor." The disposition order and supplemental order are similarly devoid of any reference to a standard of proof.

The only point during the entire proceeding at which a standard of proof was at all mentioned was during the State's closing argument, during which it argued, "The State is respectfully asking that the Court find that the State's met its burden of proof beyond a reasonable doubt of the elements of this indecent liberties between children." The trial court did not respond to the State's closing argument until the State began arguing that the touching was "[f]or the purpose of arousing or gratifying

sexual desire," to which the trial court responded, "Where was that at? Where was that evidence? Show me that?"

This is insufficient for several reasons. First, and most apparent, it was the State referencing the standard of proof, not the trial court, who is the entity statutorily required to incorporate the standard into its findings. The trial court did not respond to the State's use of this standard, nor incorporate it by reference. Second, the trial court never used the term "reasonable doubt" at any point orally or in the written order.

This Court in *In re B.E.* addresses whether we may infer from an ambiguous trial record the standard of proof used by the trial court. *In re B.E.*, 186 N.C. App. at 661. Even though the trial court there used the phrase "reasonable term" twice during the proceedings, and it appeared as part of a pre-printed adjudication order form, it was never used in such a way as to unambiguously indicate that it was the standard employed by the trial court. *Id.* at 660–62. Furthermore, there was "substantial conflicting evidence" in the case, and the comments from the judge and his taking the case under advisement indicated that he may have had "reasonable doubt" about the case, further demonstrating the danger of finding an implied standard of proof.

Similarly here, the trial court strongly challenged the State on the issue of the purpose of the touching, saying, "I don't know what his intent was. You didn't show that. His intent was for her not to tell," then continuing after the State attempted to

resume, "And because it started with the vaping. Was it the intent for her not to tell that he had the vape or not to tell -- because you didn't -- or was it the TikTok, because, she said, 'I don't care about that. I don't care about the TikTok.' " The trial court also argued with the State over the nature of Leo's touching and the offer of money.

Thus, given the trial court's treatment of the evidence in the case, we are unable to infer that the correct standard of proof was employed, especially given the requirement for the State to prove its case beyond a reasonable doubt is a basic right guaranteed by the Constitution. *See In re B.E.*, 186 N.C. App. at 660. Since the trial court has already conducted a hearing in which it determined witnesses' credibility and weighed evidence, a new hearing is not required. *See id.* at 662. Rather, we remand to allow the trial court to make and enter an amended order incorporating the correct standard of proof; or, if this was not the standard used during the hearing, dismiss the action with prejudice.

III.     Conclusion

For the foregoing reasons, we remand this case for an amended order or a dismissal.

REMANDED.

Judges TYSON and CARPENTER concur.

Report per Rule 30(e).