STATE OF NORTH CAROLINA v. KENNY EDWARD BUFF, JR.

No. COA04-549

(Filed 17 May 2005)

**1. Evidence— videotape recordings—authentication**

The trial court did not err in a second-degree rape and attempted second-degree sex offense case by permitting the showing of video images, because: (1) the video was properly authenticated by a witness who testified that he was present for all of the video, that it accurately depicted the events he personally witnessed, and that the camera appeared to be in good working order, and an officer testified that he confiscated the videotape pursuant to a search warrant and that the tape had not been changed or altered since it was seized; and (2) as the portions of the tape defendant contends were inflammatory were not shown at trial, defendant's contentions regarding a violation of N.C.G.S. § 8C-1, Rule 403 are without merit.

**2. Appeal and Error— preservation of issues—failure to object—failure to allege plain error**

Although defendant contends the trial court erred in a second-degree rape and attempted second-degree sex offense case by permitting hearsay evidence to be admitted in a statement read to the jury by an SBI agent, this issue was not properly preserved for review because: (1) defendant made a general

objection as to the statement, and he failed to make any additional objection after the trial court gave a limiting instruction that the statement was to be considered solely for corroborative purposes; and (2) defendant does not allege plain error in his assignment.

### 3. Rape— second-degree—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree rape, because taken in the light most favorable to the State: (1) the victim's testimony established that defendant engaged in sexual intercourse with her and that she never consented; (2) a witness testified that he observed defendant engaging in sexual intercourse with the victim; (3) sufficient evidence was offered as to the victim's physical helplessness based on the large quantity of alcohol that she had consumed, her lack of experience with intoxicating beverages, her subsequent illness, and her repeated loss of consciousness; (4) another witness testified that the victim appeared to be sleeping or passed out when she checked on the victim throughout the party; and (5) although defendant challenges the victim's credibility, such a question is properly for the jury to resolve.

### 4. Sexual Offenses— attempted second-degree—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of attempted second-degree sexual offense, because taken in the light most favorable to the State, the evidence revealed that defendant committed several overt acts including touching the victim's breast and vaginal area while the victim was physically helpless, demonstrating intent to commit a sexual act against the victim's will and without her consent.

Appeal by defendant from judgments entered 24 September 2003 by Judge Ronald K. Payne in Rutherford County Superior Court. Heard in the Court of Appeals 16 February 2005.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Karen A. Blum, Special Deputy Attorney General Lars F. Nance, and Certified Legal Intern Kerry Lynn Adams, for the State.*

*William D. Auman for defendant-appellant.*

STATE v. BUFF

[170 N.C. App. 374 (2005)]

HUNTER, Judge.

Kenny Edward Buff, Jr. ("defendant") appeals from judgments dated 24 September 2003 entered consistent with jury verdicts finding him guilty of second degree rape and attempted second degree sex offense. After careful consideration of defendant's arguments, we find no error.

The evidence tends to show that on 11 January 2003, L.W., thirteen years old at that time, went to the home of defendant's grandmother with her fourteen-year-old cousin, K.S. After a few hours, L.W., K.S., and defendant went to Andrew Bradley's ("Bradley") home and joined a group of teenagers already there. A home video camera operated by Bradley was used to tape L.W., defendant, and others present at Bradley's home for part of the evening.

Various types of liquor were present, and L.W. drank four shots of liquor poured for her by defendant and Bradley. L.W. testified that she became increasingly dizzy and laid down on a mattress in a corner of Bradley's bedroom after drinking the shots. L.W. further stated that she blacked out for portions of the remainder of the night.

After the videotaping ended, L.W., defendant, and Bradley remained in Bradley's bedroom together, along with Daniel Toms ("Toms") and Grady Alan Waters ("Waters"), while others watched videos in another room. L.W. testified that she blacked out while lying on the mattress in the corner of the room, and that when she came to, defendant had removed her pants and was on top of her. He then began having sexual intercourse with her. L.W. testified Bradley put his hand over her mouth to keep her from crying out during the incident, and when defendant was finished, Bradley had sex with her. L.W. stated she again lost consciousness and did not wake up until the following morning. Toms and Waters also testified that defendant engaged in sexual intercourse with L.W.

Defendant was charged with second degree rape and attempted second degree sex offense and was found guilty by a jury of both charges. Defendant was sentenced to 100 to 129 months for the crime of second degree rape, and a concurrent sentence of 82 to 108 months for the crime of attempted second degree sex offense. Defendant appeals.

## I.

**[1]** Defendant first contends the trial court erred in permitting the showing of video images as they were not properly authenticated and as the evidence was more prejudicial than probative. We disagree.

"Videotape recordings may be admitted into evidence where they are relevant and have been properly authenticated." *State v. Billings*, 104 N.C. App. 362, 371, 409 S.E.2d 707, 712 (1991); *see* N.C. Gen. Stat. § 8-97 (2003). "The video tape should be admissible under the rules and for the purposes, then, of any other photographic evidence." *State v. Johnson*, 18 N.C. App. 606, 608, 197 S.E.2d 592, 594 (1973). "Such evidence may be admitted to illustrate the testimony of a witness or as substantive evidence." *Billings*, 104 N.C. App. at 371, 409 S.E.2d at 712. The proper foundation for a videotape may be shown by:

> "(1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes); (2) 'proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . .'; (3) testimony that 'the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing,' (substantive purposes); or (4) 'testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area "photographed." ' "

*State v. Smith*, 152 N.C. App. 29, 38, 566 S.E.2d 793, 800 (2002) (citations omitted).

Here, the trial court conducted a *voir dire* concerning the admission of the tape. K.S. and Toms testified that for the portions of the tape for which they were present, the video accurately depicted the events they personally witnessed and the camera appeared to be in good working order. Waters testified he was present for all of the video, though not for all other events occurring that evening, the video accurately depicted the events he personally witnessed, and the camera appeared to be in good working order. Officer Will Sisk ("Officer Sisk") testified that he confiscated the videotape from the home of Bradley pursuant to a search warrant, and that the tape had not been changed or altered since it was seized. We therefore find the portions of the videotape showing the events of the night of 11 January 2003 were properly authenticated and admitted for illustrative purposes.

Defendant further contends that even if properly authenticated, the tape was improperly admitted as it was inflammatory. Defendant alleges that the tape contained depictions of events other than the night of 11 January 2003 which were offered at trial only to excite prejudice and inflame the jury.

Here, trial counsel for both defendant and the State have stipulated that only the portions of the tape showing the events of the party on 11 January 2003 were shown to the jury, not the tape in its entirety. Thus, as the portions of the tape defendant contends were inflammatory were not shown at trial, defendant's contentions regarding a violation of Rule 403 are without merit.

## II.

**[2]** Defendant next contends the trial court erred in permitting hearsay testimony to be admitted. Defendant argues that the statement read to the jury by SBI Agent Steve Modlin ("Agent Modlin"), and admitted for corroborative purposes of Toms' testimony, included statements attributable to other parties, and therefore improperly admitted hearsay. We find this issue was not properly preserved for our review.

" 'In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, *stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.*' " *State v. Frye*, 341 N.C. 470, 495, 461 S.E.2d 664, 676-77 (1995) (quoting N.C.R. App. P. 10(b)(1)).

Here, defendant made a general objection as to the statement. Defendant's objection was overruled by the trial court, who then gave a limiting instruction that the statement was to be considered solely for corroborative purposes. Defendant made no additional objection to the alleged hearsay within the statement offered by Agent Modlin. As defendant objected to the evidence on only one ground, he therefore failed to preserve the additional grounds presented on appeal. *See State v. Williams*, 355 N.C. 501, 565, 565 S.E.2d 609, 646 (2002). Further, defendant does not allege plain error in his assignment. Our Supreme Court has recently held that when a defendant fails to " 'specifically and distinctly' allege plain error as required by North Carolina Rule of Appellate Procedure 10(c)(4), defendant is not entitled to plain error review of this issue." *State v. Dennison*, 359 N.C. 312, 312-13, 608 S.E.2d 756, 757 (2005). We therefore are precluded from review of this issue.

### III.

[3] Defendant finally contends that the trial court erred in denying his motion to dismiss all charges for insufficient evidence. We disagree.

> The standard of review for a "motion to dismiss based on insufficiency of the evidence is the substantial evidence test." "The substantial evidence test requires a determination that there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense."

*State v. Locklear*, 159 N.C. App. 588, 591, 583 S.E.2d 726, 729 (2003) (citations omitted).

> In ruling on a motion to dismiss the trial court is to consider the evidence in the light most favorable to the State. In so doing, the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve.

*State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652-53 (1982) (citations omitted). "The court is to consider all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State." *Id.* at 67, 296 S.E.2d at 653.

> Here, defendant was charged with the crime of second degree rape. A person is guilty of second degree rape if

> "the person engages in vaginal intercourse with another person: (1) By force and against the will of the other person; or (2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless."

*State v. Strickland*, 153 N.C. App. 581, 594, 570 S.E.2d 898, 907 (2002) (quoting N.C. Gen. Stat. § 14-27.3). Taken in the light most favorable to the State, the testimony of L.W. established that defendant engaged in sexual intercourse with her, as she stated that defendant "put his penis inside my vagina." Toms also testified that he observed defendant engaging in sexual intercourse with L.W. Further, sufficient evidence was offered as to L.W.'s physical helplessness. L.W. testified as

to the large quantity of alcohol she had consumed and her lack of experience with intoxicating beverages, and as to her subsequent illness, resulting in repeated loss of consciousness. K.S. also testified that L.W. appeared to be sleeping or passed out when she checked on her throughout the course of the party. L.W. further testified that she awoke to find defendant removing her pants, but continued blacking out during the act, that she said "[o]w" as the intercourse was causing her pain, that defendant directed Bradley to put his hand over her mouth to keep her quiet and that she bit Bradley's hand when he did so before passing out again. L.W. stated that she never consented to any type of sexual conduct with defendant or Bradley. Although defendant challenges L.W.'s credibility, such a question is properly for the jury to resolve. *See Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 653. We, therefore, find sufficient evidence as to all elements of second degree rape was presented to survive a motion to dismiss.

**[4]** "The elements of second-degree sexual offense are: (1) a person engages in a sexual act; (2) with another person; and (3) the act is by force and against the person's will." *State v. Tucker*, 154 N.C. App. 653, 655, 573 S.E.2d 197, 199 (2002); *see* N.C. Gen. Stat. § 14-27.5(a) (2003). A sexual act, for the purposes of § 14-27.5 means "the penetration, however slight, by any object into the genital or anal opening of another person's body[,]" but does not include sexual intercourse. N.C. Gen. Stat. § 14-27.1(4) (2003). In order to convict a defendant of attempted second degree sexual offense, the State must show that (1) the defendant had the specific intent to commit a sexual act against the victim; and (2) that the defendant committed overt acts showing intent to commit the sexual act, going beyond mere preparation but falling short of the completed offense of second degree sexual offense. *See State v. Mangum*, 158 N.C. App. 187, 192, 580 S.E.2d 750, 754 (2003) (discussing the elements of attempted rape).

Here, Waters testified that he observed defendant "[go] down her pants" while fondling L.W.'s breast. He then observed defendant remove L.W.'s pants and touch her "private," which was clarified to mean between her legs, but did not observe him insert anything inside her private. As noted previously, L.W. testified that she never consented to any type of sexual conduct with defendant, and sufficient evidence as to L.W.'s physical helplessness was offered. Therefore, when taken in the light most favorable to the State, the evidence presented showed defendant committed several overt acts, including touching L.W.'s breast and vaginal area, demonstrating intent to commit a sexual act against L.W.'s will and without her consent. The evi-

dence, therefore, was sufficient to reach the jury as to the charge of attempted second degree sexual offense.

As we find the video evidence to be properly authenticated and admitted, and sufficient evidence presented as to both charges to survive a motion to dismiss, we find no error.

No error.

Judges CALABRIA and JACKSON concur.