HUNTER, JR., ROBERT N., Judge.
Juvenile Ira Hamilton[1] appeals from an adjudication order finding him delinquent for attempted second-degree sexual offense in violation of N.C. Gen.Stat. § 14-27.5. The juvenile alleges the trial court erred in its delinquency determination on three grounds: (1) the delinquency petition was insufficient to confer jurisdiction in the trial court to adjudicate the juvenile; (2) the trial court erred in denying his motion to dismiss; and (3) the trial court erred in failing to find beyond a reasonable doubt that he attempted to commit a second-degree sex offense. For the following reasons, we affirm the trial court's adjudication order.
I. Factual & Procedural History
This case involves an attack that occurred on 4 October 2013. Ira is a fourteen-year-old boy who, at the time of this incident, attended Parkland High School in Winston-Salem. The target of the attack was an eleven-year-old autistic boy named Nate Sawyer.[2] Nate lives with his mother and grandmother in Winston-Salem. A social worker involved in the case described Nate as presenting physically, emotionally, and behaviorally younger than his chronological age. Nate's description of what happened to him on 4 October 2013 has varied over time. The evidence presented at trial tended to show the following facts:
Nate testified on the night of 4 October 2013, he played soccer with neighborhood friends. After soccer, he went to his friends' house, which is on the same street as his own house. When the friends finished playing, Nate started walking home. As he walked, Nate heard someone yell out "help," and he ran to the back of a house, toward the sound. Then, either three or four "boys" grabbed Nate, tied him up, and hit him with their hands and with sticks. Two of the boys took off Nate's clothes and threw them behind a tree. The other boy, who Nate identified to be Ira, "st[uck] the sticks in [his] behind." Nate testified he was not sure if it was a wooden stick or another kind of stick, but he knew something went in his behind because he felt it and it hurt. Nate reiterated Ira "was the one that was doing the thing." The boys then ran away; Nate put his clothes back on and went home. He told his mother and grandmother "they hurt me." Nate's mother testified Nate had "dirt all over him" and "[h]is clothes were disfigured ... they were not on properly." She estimated it was about 9:30 P.M. when Nate arrived home. She immediately called the police.
Juan Hernandez testified on the night of 4 October 2013, around 8:00 or 9:00 P.M., he was sitting in his car one block away from Nate's street, talking to his girlfriend. Three or four boys ran up to Hernandez and asked him for a ride. One or two of these boys were not wearing shirts and "they were sweaty." Hernandez identified Ira as one of the boys. Hernandez declined to give the boys a ride. He later gave police a description of the boys and told police he knew that two of the boys were brothers and that they went to Parkland High School.
Later that night, Nate was transported to Wake Forest Baptist Hospital, where he was examined by a sexual assault nurse examiner, Joyce Hilton. Hilton examined Nate only a few hours after the alleged attack, around 12:00 A.M. The examination began by Nate recounting the events of the night to Hilton. Nate told Hilton the boys "took [his] clothes off[,] ... put their nuts in [his] butt and one put ... it in [his] mouth, and they put four sticks in [his] butt." Hilton conducted a physical examination of Nate. Hilton reported Nate had "no injuries, but we did notice some grass and dirt under his testicular sac when we examined his private areas ." Hilton examined Nate's anus and found it was normal, with no signs of penetration. Two weeks later, on 17 October 2013, Nate described what happened to social worker Cynthia Stewart. Nate told Stewart the boys "sticked [sic] four sticks in my butt, not real sticks, like they [sic] weenies."
The State filed a juvenile petition against Ira on 16 January 2014. The case came on for trial in Forsyth County District Court on 27 May 2014. The State presented testimony from eleven witnesses, including Nate. At the close of the State's evidence, Ira's attorney moved to dismiss the petition. The motion to dismiss was denied. Ira chose not to present evidence. The State gave its closing argument. Ira's attorney gave his closing argument, during which he asked the trial court "to dismiss these petitions." The trial court adjudicated Ira a delinquent juvenile on the attempted second-degree sexual offense charge. The trial court entered a written juvenile adjudication order in accordance with her findings on 28 May 2014.
II. Jurisdiction
Jurisdiction lies in this court pursuant to N.C. Gen.Stat. § 7A-27(b)(2), which provides for an appeal of right directly to the Court of Appeals from any final judgment of a district court in a civil action. SeeN.C. Gen.Stat. § 7A-27(b)(2) (2014).
III. Standards of Review
The juvenile presents three claims for our review. First, the juvenile claims the delinquency petition was insufficient. "[A] defective petition is inoperative and fails to evoke the jurisdiction of the court." In re M.S.,199 N.C.App. 260, 262, 681 S.E.2d 441, 443 (2009) (citation and quotation marks omitted). "Challenges to a court's subject matter jurisdiction may be raised at any time." In re T.R.P.,360 N.C. 588, 595, 636 S .E.2d 787, 793 (2006) (citations omitted). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." McKoy v. McKoy,202 N.C.App. 509, 511, 689 S .E.2d 590, 592 (2010) (citation omitted).
Second, the juvenile claims the trial court erred in denying his motion to dismiss. "We review a trial court's denial of a [juvenile's] motion to dismiss de novo." In re S.M.S.,196 N.C.App. 170, 171, 675 S.E.2d 44, 45 (2009).
Third, the juvenile claims the trial court failed to find proof beyond a reasonable doubt. "[I]t is reversible error for a trial court to fail to state affirmatively that an adjudication of delinquency is based upon proof beyond a reasonable doubt." In re D.K.,200 N.C.App. 785, 788, 684 S.E.2d 522, 525 (2009) (internal citations and quotation marks omitted).
IV. Analysis
A. Sufficiency of the Petition
The juvenile first argues the petition does not sufficiently allege a charge from which a court can adjudicate him delinquent. We disagree.
N.C. Gen.Stat. § 7B-1802 provides
[a] petition in which delinquency is alleged shall contain a plain and concise statement, without allegations of an evidentiary nature, asserting facts supporting every element of a criminal offense and the juvenile's commission thereof with sufficient precision clearly to apprise the juvenile of the conduct which is the subject of the allegation.
N.C. Gen.Stat. § 7B-1802 (2014).
Here, the delinquency petition charged Ira with attempted violation of N.C. Gen.Stat. § 14-27.5. N.C. Gen.Stat. § 14-27.5 describes the crime of second-degree sexual offense:
(a) A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:
(1) By force and against the will of the other person; or
(2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know that the other person is mentally disabled, mentally incapacitated, or physically helpless.
N.C. Gen.Stat. § 14-27.5 (2014). The petition against Ira stated the following facts in support of the offense: "the juvenile did unlawfully, willfully and feloniously ... attempt to engage in a sex offense with [Nate Sawyer] who was at the time mentally disabled and physically helpless." The juvenile argues such a "short form" description of the facts supporting the offense is insufficient to confer jurisdiction in the trial court under the Juvenile Code. Specifically, he asserts the petition fails to include the elements of "attempt": (1) "specific intent to commit the sexual act" and (2) "overt acts showing intent."
In adult cases, a criminal indictment "charging a completed offense is deemed sufficient to support a conviction for an attempt to commit the crime charged." State v. Slade,81 N.C.App. 303, 306, 343 S.E.2d 571, 573 (1986) ; see alsoN.C. Gen.Stat. § 15-170 (2014) ("Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged[.]"). Thus, it is normally not necessary for an indictment to allege the elements of attempt in order for the adult defendant to be convicted of attempt to commit the crime for which he was indicted. Furthermore, in adult cases where second-degree sexual offense of a disabled person is alleged, our statutes allow for "short form" indictments, wherein "it is sufficient to allege that the defendant unlawfully, willfully, and feloniously did engage in a sex offense with a person who was mentally disabled, mentally incapacitated or physically helpless, naming such victim, and concluding as aforesaid ." N.C. Gen.Stat. § 15-144.2(c) (2014). Therefore, the language of the juvenile petition in this case meets the standard to which an adult indictment for attempted second-degree sexual offense would be held. The issue, then, is whether this language is sufficient in a juvenile petition alleging the same offense.
This Court has consistently recognized-in published opinions-the similarities between the juvenile petition and the criminal indictment: "[T]he juvenile petition 'serves essentially the same function as an indictment in a felony prosecution and is subject to the same requirement that it aver every element of a criminal offense, with sufficient specificity that the accused is clearly apprised of the conduct for which he is being charged.' " In re S . R.S.,180 N.C.App. 151, 153, 636 S.E.2d 277, 280-81 (quoting In re Griffin,162 N.C.App. 487, 493, 592 S.E.2d 12, 16 (2004) ). "Because juvenile petitions are generally held to the standards of a criminal indictment, we consider the requirements of the indictments of the offenses at issue." In re R.P.M.,172 N.C.App. 782, 787, 616 S.E.2d 627, 631 (2005).
In addition to noting the similarities between criminal indictments and juvenile petitions, this Court has held "[t]he sufficiency of a juvenile petition is evaluated by the same standardsas applied to indictments in adult criminal proceedings." In re J.F.,--- N.C.App. ----, ----, 766 S.E.2d 341, 345 (2014) (emphasis added); see also S.R.S.,180 N.C.App. at 156, 636 S.E.2d at 281 (holding "all that is required of an indictment ... also is all that is required of a juvenile petition[ ]"). We disagree with the juvenile's contention the standard articulated in J.F.amounted to dicta. While it is true the juvenile in J.F.did not specifically argue an invalid use of "short form" language, J.F. didanalyze whether the language in a juvenile petition satisfied the applicable statutory requirements. In J.F.,the juvenile argued the petition was insufficient because it failed to describe the specific time period and number of times during which the sexual acts were alleged to have occurred. In reaching its conclusion, the Court looked to the language of the petition in comparison with the requirements for a criminal indictment based on the same crimes. Indeed, the J.F.court quoted the "short form" indictment language for the charges alleged and concluded this language also met the statutory requirement for a juvenile petition. J.F.controls our decision here. Therefore, we hold the juvenile petition was sufficient in this case.
B. Motion to Dismiss
The juvenile next argues the trial court erred in denying his motion to dismiss. The State contends the juvenile did not properly preserve this issue for appellate review because his attorney failed to make a motion to dismiss at the close of all evidence. Assuming without deciding the juvenile properly preserved this issue for appellate review by asking the court to "dismiss these petitions" in his closing argument, we hold the trial court did not err in denying Ira's motion to dismiss. We review the trial court's denial of a juvenile's motion to dismiss de novo. See In re S.M.S.,196 N.C.App. at 171, 675 S.E.2d at 45.
"Where the juvenile moves to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, ... and (2) of [the juvenile's] being the perpetrator of such offense." In re Heil,145 N.C.App. 24, 28, 550 S.E.2d 815, 819 (2001) (citation and quotation marks omitted). "The evidence must be such that, when it is viewed in the light most favorable to the State, it is sufficient to raise more than a suspicion or possibility of the respondent's guilt." In re Walker,83 N.C.App. 46, 48, 348 S.E.2d 823, 824 (1986). "Contradictions in the evidence are resolved favorably to the state." State v. Sumpter,318 N.C. 102, 107, 347 S.E.2d 396, 399 (1986).
Here, the State presented evidence sufficient to "raise more than a suspicion or possibility" that: (1) Ira had the specific intent to commit a sexual act against Nate; (2) Ira committed overt acts showing intent to commit the sexual act, going beyond mere preparation but falling short of the completed offense of second-degree sexual offense; see State v. Buff,170 N.C.App. 374, 380, 612 S.E.2d 366, 371 (2005) ; and (3) Ira was the perpetrator of the offense. We address each element in turn.
First, with regard to Ira's specific intent to commit a sexual act against Nate, specific intent is the intent "to accomplish any particular purpose or do any particular thing." State v. Wilkerson,295 N.C. 559, 581, 247 S.E.2d 905, 917 (1978). The State need not prove Ira acted with the specific intent to achieve sexual gratification, only that Ira acted with the specific intent to commit a "sexual act." N.C. Gen.Stat. § 1427.1(4) defines a "sexual act" as "the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C. Gen.Stat. § 14-27.1(4) (2014).
Here, the State presented substantial evidence that Ira acted with the specific intent to penetrate Nate's anal opening with an object. Nate consistently stated both in October 2013 and in his later testimony to the trial court that the group of boys stuck objects in his behind. On 4 October 2013, Nate told Nurse Hilton "they put four sticks in my butt." On 17 October 2013, Nate told the social worker Cynthia Stewart: "[t]hey sticked [sic] four sticks in my butt, not real sticks, like they [sic] weenies." At trial, Nate testified the boys "started sticking stuff in [his] behind[,]" and specifically that Ira "st[uck] the sticks in [his] behind." When the prosecutor asked Nate "where were [the sticks] being placed?", Nate responded: "In my behind[.]" It matters not whether Ira attempted to stick his penis or a stick in Nate's behind. The evidence shows Ira attempted to stick something in Nate's behind, which constitutes the specific intent to commit a "sexual act" under the statute.
Second, with regard to the commission of an overt act, "[a]n overt act for an attempt crime, must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." State v. Key,180 N.C.App. 286, 292, 636 S.E.2d 816, 821 (2006) (quotation marks and citations omitted). In attempted sexual offense cases, to survive a motion to dismiss, the State must present substantial evidence that the defendant "committed overt acts showing intent to commit the sexual act, going beyond mere preparation but falling short of the completed offense of second degree sexual offense." Buff,170 N.C.App. at 380, 612 S.E.2d at 371.
Here, the evidence presented at trial indicates Ira committed overt acts showing his intent to commit a sexual act against Nate. Specifically, the evidence shows Ira intended to penetrate Nate's anus with some object, but that his actions likely fell short of the completed offense of anal penetration. The evidence is conflicting as to whether Ira actually penetrated Nate's anus. Nate consistently testified Ira "st[uck] ... sticks in[his] behind[,]" yet the sexual assault nurse who examined Nate on the night of the attack testified she saw no physical signs of penetration. Nevertheless, this evidence is sufficient to support the conclusion that Ira's placing of "sticks" on Nate's body constituted an overt act showing the intent to penetrate Nate's anus. Furthermore, Nate consistently reported the boys took off his clothes and threw them out of reach. Nate testified Ira "turned [him] around[,]" and "st[uck] the sticks in [his] behind" while the other boys were "holding [his] arms." The evidence that Nate's clothes were removed, that he was turned around, and that he was held down while Ira stuck an object either in or near his behind is sufficient to satisfy the "overt act" element of attempted second-degree sexual offense.
Third, with regard to Ira's being the perpetrator of the offense, Nate testified at trial that Ira "was the one that was doing the thing," referring to "sticking the stuff" in his behind. When the prosecutor asked Nate: "Do you see the person in the courtroom that stuck a stick in your butt and was hitting on you?", Nate responded: "Yes, ma'am" and identified Ira. When Ira's attorney pressed Nate on cross-examination, stating: "So you're not really sure it was even [Ira], are you?", Nate responded: "I was sure because I saw his face." Furthermore, at trial, Hernandez identified Ira as one of the boys he saw on the night of 4 October 2013, one block away from Nate's street.
Because the State presented substantial evidence Ira had the specific intent to commit a sexual act against Nate, Ira committed overt acts showing intent to commit the sexual act, and Ira was the perpetrator of the offense, the trial court properly denied the juvenile's motion to dismiss.
C. Proof Beyond a Reasonable Doubt
Lastly, the juvenile argues the trial court erred in failing to find he committed attempted second-degree sexual offense beyond a reasonable doubt. We are not persuaded.
The North Carolina Juvenile Code provides "[t]he allegations of a petition alleging the juvenile is delinquent shall be proved beyond a reasonable doubt." N.C. Gen.Stat. § 7B-2409 (2014). "If the court finds that the allegations in the petition have been proved as provided in G.S. 7B-2409, the court shall so state[.]" N .C. Gen.Stat. § 7B-2411 (2014). Therefore, "it is reversible error for a trial court to fail to state affirmatively that an adjudication of delinquency is based upon proof beyond a reasonable doubt." In re D.K.,200 N.C.App. at 788, 684 S.E.2d at 525 (citations and quotation marks omitted). This Court has held where a trial court is unclear or inconsistent in its application of the standard of proof, the case must be remanded for clarification as to the standard applied. See id.at 789, 684 S.E.2d at 525. In D .K.,the trial court found: "[T]he following facts have been proven beyond a reasonable doubt:... the State has shown by clear and convincing evidence that the juvenile did commit the act contained in the petition[.]" Id.
No such ambiguity or inconsistency exists here. The trial court's written adjudication order found "[t]he following facts have been proven beyond a reasonable doubt: The victim's story has been consistent and that he recognized and identified the juvenile. There was an attempt by the juvenile to sexually assault the victim ." These written findings clearly state the standard of proof the trial court applied.
V. Conclusion
For the foregoing reasons, we affirm the trial court's adjudication order and delinquency finding.
AFFIRMED.
Judges STEELMAN and DAVIS concur.
Report per Rule 30(e).
Judge STEELMAN concurred in this opinion prior to 30 June 2015.
Opinion
Appeal by juvenile from adjudication order entered on 28 May 2014 by Judge Denise S. Hartsfield in Forsyth County District Court. Heard in the Court of Appeals on 3 June 2015.

Ira Hamilton is a pseudonym used to protect the identity of the juvenile.

Nate Sawyer is a pseudonym used to protect the identity of the minor child.